UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL EUGENE SHOTWELL,<br>　　　　Plaintiff,<br>　　v.<br>CHAVEZ-EPPERSON, et al.,<br>　　　　Defendants. | Case No. 15-cv-02894-EDL<br><br>**ORDER OF SERVICE**<br><br>Re: Dkt. No. 24 |

Plaintiff, a California state prisoner proceeding *pro se*, has filed an amended civil rights complaint under 42 U.S.C. § 1983, alleging that defendants were deliberately indifferent to his serious medical needs.[1]  For the reasons that follow, the court dismisses several claims and defendants, and serves the remainder of the amended complaint.

**DISCUSSION**

A.　Standard of Review

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).  In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *Id.* at 1915A(b)(1),(2).  Pro se pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699

---

[1] Plaintiff's motion for an extension of time within which to file his amended complaint is granted. Plaintiff's amended complaint is deemed timely filed.

(9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged deprivation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

B.   Legal Claims

1.   Mail interference

Plaintiff describes incidents, beginning in 2009, where prison officials at Salinas Valley State Prison ("SVSP") obstructed mail being sent to and from plaintiff's attorney, and plaintiff was not being received by plaintiff. Plaintiff also alleges that Appeals Coordinatory E. Medina purposefully failed to properly process plaintiff's administrative appeals. Liberally construed, plaintiff has stated a cognizable claim that Medina and Chavez-Epperson retaliated against him, that Medina violated plaintiff's right to meaningful access to the court; and that Chavez-Epperson violated plaintiff First Amendment right to send and receive mail. (Dkt. No. 25 at 6-16.)

To the extent plaintiff also alleges a claim of conspiracy, he fails to do so. Conspiracy is not itself a constitutional tort under 42 U.S.C. § 1983. *See Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012) (en banc). It does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation. *See id.* To prove a civil conspiracy, the plaintiff must show that the conspiring parties reached a unity of purpose or common design and understanding, or a meeting of the minds in an unlawful agreement. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999). Here, plaintiff's allegations of conspiracy are conclusory without any factual support to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Accordingly, they are dismissed.

Plaintiff also alleges that on August 14, 2011, plaintiff attempted to send out envelopes by

2

giving them to Correctional Officer Cermeno. Plaintiff told Cermeno that he had been "experiencing obstructions" with his mail. Cermeno responded, "This is the price you pay for the good weather," and then yelled, "I ain't processing nobody fucking mail tonight." Cermeno refused to accept legal mail from another inmate as well. As a result, Cermeno was found to be in violation of the prison policy. (Dkt. No. 25 at 11-12.) Case law is clear, however, that isolated incidents of mail interference without any evidence of improper motive or resulting interference with the right to counsel or access to the courts do not give rise to a constitutional violation. *See Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990); *Bach v. Illinois*, 504 F.2d 1100, 1102 (7th Cir. 1974) (isolated incident of mail mishandling insufficient to state claim under § 1983). Accordingly, the claim against Cermeno is dismissed.

Similarly, plaintiff's allegation against Correctional Counselor Delaney merely complains that Delaney was responsible for the proper function of SVSP's litigation department, and Delaney failed to ensure that the litigation department was operating pursuant to the Department of Operations Manual. (Dkt. No. 25 at 15-16.) Plaintiff alleges that Delaney was "deliberately indifferent" to plaintiff's rights. Plaintiff makes a similar allegation against Associate Warden Solis, and states that Solis was deliberately indifferent to plaintiff's rights because Solis signed off on plaintiff's grievances. Plaintiff also asserts that Chavez-Epperson and Medina were deliberately indifferent to plaintiff's rights. (*Id.* at 13-14.)

While the Constitution does not mandate comfortable prisons, is also does not permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Amendment also imposes duties on these officials, who must provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. *See Farmer*, 511 U.S. at 832. A prison official violates the Eighth Amendment when two requirements are met: (1) the

3

deprivation alleged must be, objectively, sufficiently serious, and (2) the prison official possesses a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834. Here, plaintiff has not alleged a deprivation of a basic necessity by Delaney, Solis, Chavez-Epperson, or Medina sufficiently serious to satisfy the objective component of an Eighth Amendment claim. Accordingly, the Eighth Amendment claim against them is dismissed.

Finally, plaintiff alleges that Delaney retaliated against plaintiff. (Dkt. No. 25 at 16.) Plaintiff argues that he has filed many administrative grievances and a lawsuit on prison staff, and that Delaney's failure to record or log plaintiff's mail was an act of retaliation. However, plaintiff offers insufficient facts to state a retaliation claim against Delaney that is plausible on its face. There is no reasonable inference that Delaney's failure was purposeful or even "because of" plaintiff's First Amendment right. Accordingly, the retaliation claim against Delaney is dismissed.

2.      Cell searches

Plaintiff alleges that in October 2010, Correctional Officers Smith and Boles ordered plaintiff and plaintiff's cellmate to cuff up and submit to a search. (Dkt. No. 25 at 17.) Plaintiff was escorted out of his cell and strip searched. When plaintiff was allowed to return to his cell, he cell was "in a total mess." (*Id.*) Plaintiff's property was mixed up with his cellmate's property on the floor, containers were left open, legal papers were disorganized, and other papers were missing or torn.

In January 2011, Correctional Officers Boles and Florez ordered plaintiff and his cellmate to cuff up and submit to a search. (*Id.* at 18.) Plaintiff was escorted out of his cell and strip searched. When plaintiff was allowed to return to his cell, his cell was in disarray. (*Id.*) Upon seeing his cell "thrashed," plaintiff began to feel stressed out, suicidal, and homicidal. (*Id.*) Plaintiff alerted staff as to his feelings, and plaintiff was ultimately picked up by ambulance and taken to the hospital for an evaluation.

4

In April 2011, Correctional Officers Garcia and Vargas ordered plaintiff and his cellmate to cuff up and submit to a search. (*Id.* at 24.) When prompted by plaintiff, Vargas responded that Sergeant Peterson ordered the search of plaintiff's cell. Plaintiff witnessed Vargas throwing plaintiff's property away, and refusing plaintiff's plea to retain the property. Vargas told plaintiff that plaintiff was over the allowable amount of property, and gave plaintiff the option to either agree to the destruction of plaintiff's property, or send home plaintiff's property. Plaintiff chose to send his property home. Vargas reassured plaintiff that 4 boxes of plaintiff's property would be held pending resolution of plaintiff's grievance. When plaintiff returned to his cell, the cell was empty. Plaintiff later learned that plaintiff's 4 boxes of property were sent home. Plaintiff never received 2 of those boxes.

In June 2011, Correctional Officers Beyer, Rameriz, and Avila ordered plaintiff and his cellmate to cuff up and submit to a cell search. (*Id.* at 31.) While conducting the search, Beyer said, "this is a conspiracy," and all three officers laughed. Plaintiff was then interviewed regarding whether plaintiff was planning an attack on staff. When plaintiff returned to his cell, his cell was in disarray. Then plaintiff received a false RVR, which was later dismissed.

Plaintiff attempted to file grievances about these cell searches, but was consistently impeded.

### A. Correctional Officers Smith, Boles, and Florez

Plaintiff alleges that Smith, Boles, and Florez conducted retaliatory cell searches against him. There were approximately 8 searches starting in April 29, 2010 during an approximately one month period. (Dkt. No. 25 at 19.) The "constant back to back" cell searches continued again from September 2010 through January 2011. (*Id.* at 19-20.) Liberally construed, plaintiff has stated a cognizable claim of a violation of the Eighth Amendment against Smith, Boles, and Florez. *See Hudson v. Palmer*, 468 U.S. 517, 528-30 (1984).

Plaintiff also argues that these cell searches violated his First Amendment right against retaliation. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). *Accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under Section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline). The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *See Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence). Mere speculation that defendants acted out of retaliation is not sufficient. *See Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior lawsuit).

However, plaintiff offers no facts leading to a reasonable inference that Smith, Boles, or Florez conducted any cell search "because of" plaintiff's protected activities. Specifically, there are no facts to support an inference that Smith, Boles, or Florez even knew about plaintiff's protected activities, much less that those activities were the substantial or motivating factors for the cell searches. Accordingly, plaintiff's retaliation claim against Smith, Boles, and Florez are dismissed.

    B.  <u>Sergeant Peterson and Correctional Officers Garcia and Vargas</u>

Liberally construed, plaintiff has stated a cognizable claim that Peterson, Garcia, and Vargas retaliated against him; Vargas exhibited cruel and unusual punishment; and Vargas violated due process. To the extent plaintiff intended to assert a state law claim regarding Vargas'

6

handling of plaintiff's property, the court exercises supplemental jurisdiction over that claim.

### C. Correctional Officers Beyer, Rameriz, and Avila

Liberally construed, plaintiff has stated a cognizable claim that Beyer, Rameriz, and Avila retaliated against him.

To the extent plaintiff asserts that Beyer, Rameriz, and Avila conducted a retaliatory cell search in violation of the Eighth Amendment, that claim is dismissed for failure to state a claim. While *Hudson* announced that the Eighth Amendment protects prisoners from cell searches conducted solely as "calculated harassment," 468 U.S. at 528-30, in general, "courts have determined the frequent and retaliatory cell searches which result 'in the violent dishevelment of [the prisoner's] cell' and cause the prisoner to suffer "fear, mental anguish, and misery" constitute an Eighth Amendment violation" *Chevere v. Johnson*, 38 F.3d 1220 (10th Cir. 1994) (quoting *Scher v. Engelke*, 943 F.2d 921, 924 (8th Cir. 1991). In contrast, claims alleging few or infrequent cell searches, even when coupled with insulting statements or the destruction of an inmate's property, the courts have generally held fail to state a claim under the Eighth Amendment. In *Vigliotto v. Terry*, 873 F.2d 1201 (9th Cir. 1989), the plaintiff alleged several harassing searches, but only one with any specificity. The Ninth Circuit was underwhelmed by the vaguely pleaded searches and held that "a single incident is insufficient" to infringe upon the Eighth Amendment. *Id.* at 1203; *see also Hudson*, 468 U.S. at 517 (a single shakedown search did not amount to an Eighth Amendment violation). Accordingly, plaintiff's Eighth Amendment claim against Beyer, Rameriz, and Avila is dismissed.

### D. Appeals Coordinator Medina

Liberally construed, plaintiff has stated cognizable claims that Medina has violated plaintiff's right of meaningful access to the court, and retaliated against plaintiff.

### 3. Yard and work access

Plaintiff alleges that on August 5, 2010, plaintiff submitted an administrative grievance

against Correctional Officer Beyer and other staff for not calling plaintiff to work and keeping plaintiff in his cell during plaintiff's yard time. Beyer and Correctional Officer Roach pulled plaintiff aside and impliedly threatened plaintiff if plaintiff did not withdraw the grievance. Plaintiff thereafter dropped the grievance with Beyer and Roach's promise to "fix" the problem. Beyer did not stop failing to let plaintiff out to work or for his yard time, and plaintiff submitted a complaint.

Liberally construed, plaintiff has stated cognizable claims that Medina has violated plaintiff's right of meaningful access to the court, and Medina and Beyer retaliated against plaintiff.

To the extent plaintiff argues that Beyer violated plaintiff's right to equal protection, that claim is dismissed. When challenging his treatment with regard to other prisoners, courts have held that in order to present an equal protection claim a prisoner must allege that his treatment is invidiously dissimilar to that received by other inmates. *See More v. Farrier*, 984 F.2d 269, 271-72 (8th Cir. 1993) (absent evidence of invidious discrimination, federal courts should defer to judgment of prison officials); *Timm v. Gunter*, 917 F.2d 1093, 1099 (8th Cir. 1990) (same). The first step in determining whether the inmate's equal protection rights were violated is to identify the relevant class of prisoners to which he belongs. *See Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013). The class must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified. *See id.* at 1031. Here, plaintiff does not allege that he was part of a class of similarly situated persons that Beyer treated differently than others; rather, plaintiff asserts that Beyer treated him personally different for being black and for having a mental illness.

Finally, although plaintiff asserts that Mojica conspired to retaliate against him and deny him access to the courts, the facts against Mojica are insufficient to establish a claim against him. The only facts plaintiff offers against Mojica are that Mojica screened out one of plaintiff's

administrative grievance against Medina, reasoning that the appeal failed to provide documents and state specific facts. Plaintiff disagrees that the grievance was not specific and then complains that the he tried to dispute the grievance but "the whole appeal disappeared." (Dkt. No. 25 at 23.) Again, plaintiff's facts do not lead to a reasonable inference that Mojica screened out plaintiff's grievance "because of" plaintiff's protected activities. Nor was there any factual support to infer that Mojica knew about plaintiff's activities, much less that those activities were the substantial or motivating factors for Mojica's one-time screening out of plaintiff's grievance. Speculation that Mojica acted out of retaliation is not sufficient. *See Wood*, 753 F.3d at 904.

In addition, although there certainly is a right to petition the government for redress of grievances, there is no right to a response or any particular action. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) ("prisoner's right to petition the government for redress . . . is not compromised by the prison's refusal to entertain his grievance.").

Accordingly, the retaliation and denial of access to courts claims against Mojica are dismissed.

**CONCLUSION**

1. The following claims are dismissed for failure to state a claim: (1) conspiracy; (2) mail interference claim against Cermeno; (3) Eighth Amendment claim against Delaney, Solis, Chavez-Epperson, and Medina; (4) retaliation claim against Delaney; (5) retaliation claim against Smith, Boles, and Florez; (6) Eighth Amendment claim against Beyer, Rameriz, and Avila; (7) equal protection claim against Beyer; and (8) retaliation and denial of access to courts against Mojica. Defendants Cermeno, Delaney, Solis, and Mojica are dismissed from this case.

2. The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the amended complaint and all attachments thereto, a magistrate judge jurisdiction consent form, and a copy of this order to Mail Supervisor Chavez-Epperson, Appeals Coordinator E. Medina, Correctional

Officer Smith, Correctional Officer Boles, Correctional Officer Florez, Sergeant Peterson, Correctional Officer Garcia, Correctional Officer Vargas, Correctional Officer Beyer, Correctional Officer Rameriz, and Correctional Officer Avila at Salinas Valley State Prison. The Clerk of the Court shall also mail a courtesy copy of the amended complaint and a copy of this order to the California Attorney General's Office. Additionally, the Clerk shall mail a copy of this order to plaintiff.

3. Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and complaint. Pursuant to Rule 4, if defendants, after being notified of this action and asked by the court, on behalf of plaintiff, to waive service of the summons, fail to do so, they will be required to bear the cost of such service unless good cause be shown for their failure to sign and return the waiver form. If service is waived, defendants will be required to serve and file an answer within sixty (60) days from the date on which the request for waiver was sent to them. Defendants are asked to read the statement set forth at the bottom of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons. If service is waived after the date provided in the Notice but before defendants have been personally served, the Answer shall be due sixty (60) days from the date on which the request for waiver was sent or twenty (20) days from the date the waiver form is filed, whichever is later.

4. No later than **sixty (60) days** from the date the waivers are sent from the court, defendants shall file a motion for summary judgment or other dispositive motion with respect to the cognizable claims in the complaint. At that time, defendants shall also submit the magistrate judge jurisdiction consent form. Any motion for summary judgment shall be supported by adequate factual documentation and shall conform in all respects to Rule 56 of the Federal Rules of Civil Procedure. A motion for summary judgment also must be accompanied by a *Rand* notice so that plaintiff will have fair, timely and adequate notice of what is required of him in order to

10

oppose the motion. *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment). **Defendants are advised that summary judgment cannot be granted, nor qualified immunity found, if material facts are in dispute. If defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the court prior to the date the summary judgment motion is due.**

5.      Plaintiff's opposition to the dispositive motion shall be filed with the court and served on defendants no later than **twenty-eight (28) days** from the date defendants' motion is filed. Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (holding party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim).

6.      Defendants <u>shall</u> file a reply brief no later than **fourteen (14) days** after plaintiff's opposition is filed.

7.      All communications by plaintiff with the court must be served on defendants, or defendants' counsel once counsel has been designated, by mailing a true copy of the document to defendant or defendants' counsel.

8.      Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) is required before the parties may conduct discovery.

9.      It is plaintiff's responsibility to prosecute this case. Plaintiff must keep the court informed of any change of address by filing a separate paper with the clerk headed "Notice of Change of Address." He also must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**

Dated: 8/15/2016

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge